## Thomas M. Cooley v. Joshua W. Waterman.

*Tax sale, when void: Purchaser: Non-payment of tax.* When the owner of a distinct tract of land neglects to pay his taxes thereon, and the same is sold jointly with the land of others for the non-payment, and he becomes the purchaser of the whole, *held*, that the sale is void: the purchaser being in default in not paying his own tax.

*Heard January 10th. Decided January 13th.*

Appeal in chancery from Barry Circuit.

The bill in this cause was filed to quiet the title to certain lands owned by complainant.

The defendant relied upon the Auditor General's deed for the sale of said land for non-payment of taxes for the year 1859.

A decree was entered in the court below for complainant.

*C. M. Croswell*, for complainant.

1. It is the duty of every man to pay his own taxes, and he can gain no rights by neglecting to perform that duty.

But when he neglects to pay his taxes, and his lands are sold jointly with others for the non-payment, and he becomes the purchaser, the sale must be void, because based partly upon the purchaser's own default.

The attempt is made to distinguish the cases of *Page v. Webster*, 9 *Mich.* and *Butler v. Porter*, 13 *Id.*, on the ground that an undivided interest existed. But there is nothing in this distinction. An undivided interest is recognized by the law, and the owner may pay the tax on it separately. See *Laws* 1858, *p.* 186, § 91; also *Comp. L.* § 857.

It is to be assessed separately where the owner is known. *Laws of* 1858, *p.* 180.

The owner of one undivided interest has no duty imposed upon him to pay the tax upon the other undivided interest; but he is bound to pay the tax upon his own, and he can not sustain a purchase based partly on his own default. So in this case: if Waterman had paid the taxes on his own land, his right to bid on the sale of any which adjoined it, could not be disputed; but when he has an interest in the land sold, which made it his duty to pay a part of the taxes, he must perform that duty; or, at least, that he shall gain no rights by neglecting it.

Suppose A owns a lot lying north of B's, and the two are assessed and sold together. B bids upon the land against others, and the north fifty acres are struck off to him.

If the purchase is valid, the tax on the two parcels are thereby transferred to the fifty acres. Can it be seriously argued that, by thus neglecting his own duty, B can place a party, no more in default than himself, in the position where he must pay the taxes of both, or lose his land?

2. It was argued in the court below that the stipulation on which the case was heard did not show that defendant " claimed to own" the one hundred and twenty acres at the time of the purchase in question. It is agreed that Waterman held deeds for those lands which the statute makes evidence of a perfect title, and which, for aught that appears, did give him a perfect title. When a man is shown to have title to land, proof that he claims to own it is of very little importance.

The sale was void, and the decree of the court below should be affirmed.

*H. K. Clarke*, for defendant.

The complainant contends that " no man is to take advantage of his own wrong." The alleged wrong is, that because the defendant owned one hundred and twenty acres of the two hundred that were sold, he ought to have paid the taxes on the whole, and so protected the whole two hundred acres from sale. The theory of the complainant seeming to be that because his land and the defendant's were assessed together, it was wrong in the defendant not to pay the complainant's taxes, and therefore he can gain no right which flows as a consequence therefrom.

The mere statement of the case shows how untenable it is. The defendant had no interest in, or duty concerning the complainant's land at the time of his purchase. The case of *Page v. Webster*, and *Butler v. Porter*, cited by the complainant, are both decided on the ground of ownership in the land sold. They were cases of a tenancy in common; and if one tenant paid the tax on the whole land, he could recover from the other his due proportion of the

tax. But no such right exists here. If the defendant had paid the whole tax on the two hundred acres, he could not have recovered of the complainant his proportion for the eighty acres. Their interests were entirely distinct. And if the defendant had paid in full the taxes on the land alleged to be his, it would not have relieved the complainant's land of a penny of its burden.

It is, however, an unwarranted assumption of the complainant's brief that the defendant "claimed to own" the one hundred and twenty acres west of the complainant's lot. The proof shows no such thing as a claim of ownership. It does show that the defendant had for several years bought portions of the one hundred and twenty acres at prior tax sales, and had taken deeds therefor. But no claim of ownership is set up, nor does any fact appear which would render the defendant personally liable for, or charge him with the duty of paying the taxes levied on the one hundred and twenty acres.

GRAVES J.

This case comes to this court on appeal by the defendant from the decree of the Circuit Court for the county of Barry, in chancery.

It appears that the southeast quarter of section eight, in township two, north of range eight west, was purchased of the United States by Voltain Spaulding, who conveyed the west half thereof to Volney Spaulding, July 31st, 1852; that Volney Spaulding conveyed the same, on March 15th, 1854, to George E. Pomeroy, by whom it was conveyed to complainant on November 8th, 1861. It also appears that the east half of the southwest quarter and the northwest quarter of the southwest quarter of said section were sold by the United States to William F. Goodwin, in 1839; that the southwest quarter of the southwest quarter of said section was sold by the United States to Thomas Barber, in 1853;

that the whole south half of the section was assessed together as one parcel as non-resident lands, for state, county and township taxes of 1859; and that the west half of the southeast quarter, the east half of the southwest quarter, and the northwest quarter of the southwest quarter were all sold together for non-payment of said taxes for that year: the taxes upon the remainder of said south half of said section having been paid before sale. And it further appears, that on said sale the defendant became the purchaser and received the *usual* deed from the Auditor General for said lands, when the time for redemption had expired; and that the defendant had for several years held, and has continued to hold, tax titles for the east half of the southwest quarter of said section, and the northwest quarter of the southwest quarter and the east half of the southeast quarter of the same section, with all the rights conferred by such titles.

It will appear from this statement that at the time of the assessment in 1859, of the south half of the section in one body, and which included the lot deeded by Pomeroy to the complainant, and at the time of the tax sale in that year, when the defendant purchased, and thereafter, the defendant was presumptively the owner, and in this case, upon the facts thereof, must be considered as the owner of at least two of the parcels which were joined with the lot of the complainant in the assessment, and also in the sale to the defendant; and the question is, whether, under the circumstances, the assessment and sale of the lot conveyed to the complainant were invalid.

Upon the argument, this question was divided into the two following:

*First*: Whether the assessing officer could legally embrace in one assessment the different parcels assessed as one in this instance; and, *second*, whether the defendant, by suffering his own land to be sold, and to himself, in union with

that of complainant, acquired any right whatever to the land of the latter.

The first question is one of great difficulty, and, as we are able to decide the case upon the second, we forbear to discuss it.

Although the south half of the section was assessed in one body, it yet appears from the case, that upon some portions of it the taxes were paid before the time of sale; and it was entirely practicable for the defendant to have singled out his lots and paid the taxes upon them, if he had been so disposed.

He was not compelled to allow his lots to share the fate of the complainant's, and can therefore claim no immunity upon the ground that he could only protect his own land by becoming the purchaser of the whole.   The sale to the defendant was *entire* and *indivisible*, and as such resulted from his failure, from design or otherwise, to pay the taxes on his *own land*.   The very act in which he made default is sought to be turned to his profit at the expense of the complainant.   Neither party ought to profit by his default, and the complainant is in no situation to do so.   It remains to see that the defendant does not.

The counsel for the defendant endeavored to distinguish this case from *Page v. Webster*, 8 *Mich.* 263, and *Butler v. Porter*, 13 *Id.* 292.   He took the position that these cases were both decided on the ground of ownership by the parties as tenants in common, or the like.   It will be seen however, in recurring to the opinion of the majority of the court in the last suit, that such was not the case.   At page 302, my brother Christiancy, speaking for the majority of the court uses this language:  "But, to say nothing of the tax titles, he (Butler) had a good title to one undivided third of the lot; and the tax on one third having been paid by Guild, it is evident his tax purchase of the two-thirds for the taxes of this year, 1852, must *have included his own one-third*, for the non-payment of the tax

upon which, *he was himself in default* to the state.    This brings this sale *precisely within the letter* and *spirit* of the rule laid down by this court in *Page v. Webster,* 8 *Mich.* 263. *As owner of the one-third, it was his duty* to have paid his portion of the tax before sale.    It is insisted, by the counsel for the plaintiff in error (defendant below), that this *duty* is only imposed by possession.    This is not the ground of the decision in *Page v. Webster.*    The *duty springs* from *ownership.*    The sale is an entire *thing based upon the delinquency* in the payment of the taxes for which the sale is made, *and the purchaser can not be allowed to acquire the title of others in the property by a sale based in part, upon his own default.*    We are entirely satisfied with the *principle* of that decision, and see no reason for departing from it."

The principle is here very clearly stated.    The duty to pay, springs *from ownership,* and not from the relation subsisting between two or more owners, and it is just as imperative in the case of a single owner as in that of tenants in common; and the default or violation of duty is as palpable in the one instance as in the other.

Whether the estates of the parties are in the same parcel, or in severalty in two adjoining parcels, can make no difference in the principle.

If the two parcels, separately owned by the parties, are so placed as to be *involved in the same default and the same sale,* as in this instance, the case must be governed by the rule applied under the like circumstances when the estates of the parties are in the *same* parcel.

The decree of the court below must be affirmed, with costs.

CAMPBELL and CHRISTIANCY JJ. concurred.

COOLEY CH J. being a party to the suit, did not sit.