ROBERT B. CONE, Appellant, v. JOHN WOOD.

**Tax Sale:** PURCHASE BY CO-OWNER OF MORTGAGE. Where land is assessed for taxes as one parcel, which is owned by two in severalty, a mortgagee of one owner cannot purchase the entire parcel at a tax sale, and acquire title, so as to devest the other owner.

**Tax Title.** The purpose of a mortgagee in taking and assigning tax sale certificates does not go to the validity of the tax sale.

RULE APPLIED. Where a party seeks to perfect his title under tax deeds, he must have the support of a valid tax title; hence the purpose of a party through whom he claims in taking an assignment of the certificates is immaterial, since it does not go to the validity of the tax sale.

**Tender in Equity:** PLEADING. An allegation in an answer in an action to quiet title that defendant has at all times been ready and willing to redeem and to pay the lawful amount of taxes, tax

3   sales, penalties and interest chargeable on the property and here-
by offers and tenders the same and offers to pay it to plaintiff or
into court at any time and keep the tender and offer good when-
ever ascertained or on demand, is an absolute and unconditional
offer to pay the amount due.

*Appeal from Woodbury District Court.*—GEORGE W. WAKE-
FIELD, Judge.

TUESDAY, MAY 9, 1899.

ACTION to quiet title. The facts, as presented by the
record and in argument, are complicated. The primary
inquiry is as to the validity of tax deeds. Prior to July,
1889, D. T. Hedges was the owner of lots 17, 18, and 19, in
block 64, Pierce's addition to Sioux City, Iowa. The lots,
as platted, lay in the southwest corner of the block, the west
end of the lots abutting on Jones street, and lot 17, being the
south one, lay along Thirty-second street. The east end of the
lots abutted on an alley running through the block. The lots
were each fifty feet in width by one hundred and fifty feet in
length, so that the three lots made a tract one hundred and
fifty feet square. Hedges, in the sale of the tract, changed the
frontage to Thirty-second street, so as to make the lots fifty
feet east and west, by one hundred and fifty feet north and
south, but no change was made in the plat or record. For
the year 1899 the lots were assessed as platted, and numbered
17, 18, and 19. The lots as sold, and fronting on Thirty-
second street, may be known as east, west, and middle lot, and
as the middle lot has little, if any, bearing on the question we
are to consider, it may be left without further notice, except
incidentally.

It may be well to first state the facts as to ownership of
the east and west lots, regardless of the tax interest involved.
On the eighth day of July, 1889, Hedges sold the east lot to
A. M. Worden, who about the same time executed a mortgage
thereon to the Missouri, Kansas & Texas Trust Company to
secure three thousand five hundred and forty dollars. The

trust company foreclosed the mortgage afterwards, and the proceedings were such that the trust company received a sheriff's deed on execution sale for the east lot, July 7, 1891. The trust company sold the lot to the State Realty Company, January 2, 1893, and the trust company took back a mortgage for the purchase price, which interest it now holds. The middle lot was sold by Hedges, so that the title is not in him. Hedges also sold the west lot to one W. H. Cox for three thousand five hundred dollars, and took back a mortgage to secure two thousand dollars of the purchase price. This mortgage was sold to the defendant, Wood, and shows his interest in the lot.

We will now state the facts as to the tax title. As we have said, the lots were assessed by their platted numbers, 17, 18, and 19, and for the taxes of 1889, each lot being sold separately, and certificates were issued therefor,—that for lot 17 being to Keegan, that for 18 being to one Tollefson, and that for 19 to the trust company; and by assignments the trust company became the owner of all the certificates by January 7, 1891. The trust company paid the taxes on all the lots for the year 1890; that is, on the lots as platted. For the years 1891 and 1892 it paid the taxes on what we have called the middle and east lots, as they fronted on Thirty-second street, but not on the west lot, owned by Cox. At the tax sale of 1892, the trust company bid in the west lot, owned by Cox, for the taxes of 1891. In August, 1893, the trust company assigned the tax-sale certificates it held under the sale of 1890 for the taxes of 1889 to one George L. Farrell, who received from the county treasurer separate deeds for the three lots, as assessed, 17, 18, and 19. Farrell was an officer in the trust company, and took the assignments of the certificates under an agreement that he would take the tax deeds, and then deed to the trust company, or to whom it might direct, the east third of the lots, being what we are calling the east lot, and retain for himself the middle and west lots; and, in pursuance thereof, he did deed, by direction of the

trust company, the east lot to the realty company, it being an allied corporation to the trust company. The plaintiff was, from March, 1892, to May, 1896, the secretary of the trust company, and he brings this suit alleging ownership of the west one hundred feet of said lots, being the middle and west lot, under the other designation. Plaintiff came to his ownership of the lots by a conveyance, first, from Farrell of an undivided one-half of the lots; then Farrell and plaintiff joined in a deed to one Cooper of said lots; and, later, Cooper conveyed the lots to plaintiff. Plaintiff brings this action to quiet his title, making numerous parties defendant, but defendant Wood alone answers, denying the validiy of the tax deeds, and offering to redeem. The district court held the deeds under which plaintiff claims void, and gave the defendant relief. The plaintiff appealed.—*Affirmed.*

*Taylor & Burgess* for appellant.

*Marks & Mould* for appellee.

GRANGER, J.—I. There is no doubt to our minds that plaintiff stands as to his rights under the tax deeds issued to Farrell, as would the trust company were it the plaintiff asking the same relief. By this we mean that there are no intervening equities in his behalf.

The question we now consider is, had the trust company the right to purchase at tax sale and take title to the west one-third of lots 17, 18, and 19, being what we have called the west lot? If it had not, it is because of its interest in the east one-third of these lots because of its mortgage thereon. Throughout the case it appears that the trust company, in what it did by way of obtaining the certificates of sale and assigning, acted alone with a view to protect its interest as mortgagee. Each lot being assessed as an entirety, with no prescribed legal method of making an apportionment of the taxes levied, so as to permit it to pay its proportion, on the basis of its interest, the company adopted

the expedient of protecting its interest by securing the title through the sale for taxes; that is, it adopted the plan of securing the certificates, and then disposing of them, so as to take title to itself of the east lot, or another for it, and permit another to take the title to the balance. The sales of the lots being separate, they may be regarded as separate transactions in our considerations.

That the trust company had the right to pay the taxes on the property on which it held the mortgage, see *Eck v. Swennumson,* 73 Iowa, 423. The same case also announces the rule that a mortgagee cannot, by purchase at a tax sale, defeat a senior mortgage or acquire title against the mortgagor. The holdings are as to the specific land covered by the mortgage. The rule is that attempted purchases of that kind amount to a payment of the taxes, and not to a purchase. We notice these unquestioned rules, to have in mind how the relationship of mortgagee affected the trust company in what it did. Then, as to the part of the lots covered by its mortgage, it had the right to pay the taxes, and not to purchase it. But it could not do that. And here we may say that it made the attempt with the treasurer of the county and the other parties, and no apportionment could be made, because of the entire assessment of each lot. The assessment was prior to the taking of the mortgage, and the mortgage was taken with knowledge of it. We think the mortgage gave to the trust company, for the purpose of protecting its interest against tax sales, the same rights as if it had purchased the same land. We have, then, this question: Where the land is taxed as one parcel, which is owned by two in severalty, can a mortgagee of one owner purchase the entire parcel at tax sale, and acquire title, so as to devest the title of the other owner. This precise question does not seem to have been settled in this state. The case nearest in point is that of *Lewis v. Ward,* 99 Ill. 525. Lewis was the owner of the north half of lot 316, and taxes became due thereon. Before the tax sale Woodward became the owner of the north fifty feet, leaving

to Lewis the south twenty-five feet. Woodward, instead of paying the taxes, purchased at the tax sale the whole north half of the lot, and assigned the certificate, and a deed issued thereon to one Pitts, and Ward purchased the twenty-five feet owned by Lewis from Pitts. We quote from the case as follows: "The law is well settled that certain persons, on account of their relations to the property or their obligation to pay the taxes thereon, are forbidden by the policy of the law to become purchasers of the land at a tax sale. The rule admits of no exception, that a purchase by one whose duty it is to pay the taxes operates as payment, and nothing more. Where it is made to appear it was the duty of the party to pay the taxes on the lands, the disqualification at once attaches, and a purchaser will not be permitted to derive any advantage from that which it was his plain duty, under the law, to do. The rule on this subject is plain, and is so just that it commends itself to the common judgment as right. The only difficulty lies in the application of the rule to particular cases. It has been extended to a case where the land of the party making the purchase was taxed as one parcel with that of another and the whole sold together. That is precisely the case here. The whole of the north half of lot 316 was assessed to plaintiff. Of the north half of the lot plaintiff at the time owned twenty-five feet, and Woodward owned the other fifty feet. The entire tract was sold as it was assessed, as one parcel, and was purchased by Woodward, who owned, as has been seen, two-thirds of the property sold to himself. These facts bring the case clearly within the inhibition of the principle stated. A case exactly in point is *Cooley v. Waterman,* 16 Mich. 366. In this case, as in that, the sale was entire and undivisible, and resulted from the neglect of the purchaser to pay taxes on his own land. Had the purchaser first paid his own proportion of the taxes assessed on his land, his relation to the residue of the property and the taxes would then have been that of a stranger, owing no duty to the land or the tax, and the disqualification resting upon him would have

been removed. That he did not do, but chose, for some reason, to purchase the whole tract of land for the entire amount of taxes due upon it, the largest portion of which it was his duty to pay." The case concludes with a holding that the purchase at the tax sale operated as a payment of the taxes and gave no title. Had the trust company owned the land its mortgage was on, we do not see why the two cases would not be alike in principle. The inhibitions of the rule apply as strongly to a mortgagee as to an owner. In the cases the inhibitions are made to depend at times on when the person has the "right" to pay the taxes, and at others when he is under an "obligation" to pay them. The distinction is not as important as it is thought to be. The words are many times interchangeable in their use. Sometimes the word "obligation" is used to denote an agreement or undertaking to pay taxes; at others, it is used in the sense of an obligation to do so to protect an interest or title, as, in one sense, the owner of land is not under obligation to pay the taxes thereon, for he may forfeit it, and yet in another sense he is under such an obligation in order to preserve his title. The same is to be said of a mortgagee whose interest requires such a payment for its protection. He must forfeit his lien or pay the taxes. The Illinois case speaks of the owner paying his proportion of taxes assessed, as if that might have been done, and we do not lose sight of the fact that, in this case, there was no defined way of doing that. But, without an attempt to point out a way for doing it, which we should not do, it is to be said that, whatever was the legal requirement to discharge the taxes from the mortgaged lot, he was compelled to do, and thus relieve the land that he could not purchase at tax sale, but might pay the taxes on. If the company must pay all taxes due on a lot and take an added lien therefor, or, if a proceeding might be adopted to fix its proportion, in either case we think, before it could purchase at tax sale, it must make such payment that, if it takes a title, it will not be based in part on its own default. The thought runs throughout the cases.

As more or less sustaining the rule, see *Maul v. Rider,* 51 Pa. St. 377; *Cooley v. Waterman,* 16 Mich. 366; *Manning v. Bonard,* 87 Iowa, 648; *Fair v. Brown,* 40 Iowa, 209. It is true that few of the cases involve substantially the same facts. The general rule, in all its bearing, is against the right to acquire such a title. It could not be permitted, without involving complications that should be avoided.

Appellant cites a number of cases in support of his contention, and among them that of *Oswald v. Wolf,* 129 Ill. 200 (21 N. E. Rep. 839), being strongest in his favor, and yet it will be seen that its facts are so different as to make it distinguishable from this case. It will be understood that it was thought to be distinguishable from *Lewis v. Ward, supra,* by that court, for it followed that case without a reference to it. *Powell v. Lantzy,* 173 Pa. St. 543 (34 Atl. Rep. 450), is cited by appellant. We have cited *Maul v. Rider* from the same state as sustaining, to some extent at least, our conclusions. These cases, cited by appellant, state a rule peculiarly applicable to owners of land purchased after an incumbrance has attached, and for the discharge of which he is under no obligation arising from his acquisition of the property, and as to such he may perfect or better his title by a purchase at a tax sale. We do not see that such a rule has ever been held as to a mortgagee, and, in fact, the reasons do not exist for it. They are usually, if not always, against it. It is said, as against the defendant's claim, that he does not show that he, or Cox, his mortgagor, had title to the property at the date of the tax sale, but we think the facts appear throughout the record as we have stated them.

II. It is also said that defendant did not show that he or the person under whom he claims had paid the taxes due upon the property. It is conceded that an offer in the pleadings to pay the amount due is all that is required. The answer contains an offer to pay, but it is said to be conditional, and that such an offer is not sufficient. The pleading in this respect is as follows: "That this

defendant has at all times been ready and willing to pay the just and lawful amount of said taxes, tax sales, penalties, and interest that were chargeable on said west one-third of said lots, and hereby offers and tenders the same, and offers to pay the same to the plaintiff, or into court, at any time, and to keep said tender and offer good whenever the same shall be ascertained or on demand." We do not regard it as conditional, but absolute and unconditional. It accords with the rule as stated in *Crawford v. Liddle,* 101 Iowa, 148.

III. It is urged that the trust company had no further connection with the tax-sale certificates than that they should not be used against the east one-third of the lot; that it cannot be regarded as an actual assignee of the certificates. That the purpose of the company in taking and assigning the certificates was to protect its interest as mortgagee we have no doubt. But that fact does not affect the legal situation between plaintiff and defendant Wood. Plaintiff seeks to perfect his title against Wood, and to do that he must have the support of a valid tax title. The purpose of the company does not go to the validity of the tax sale. The terms of redemption, if defendant is entitled to redeem, as prescribed by the court, are not questioned. The judgment will stand AFFIRMED.