D. T. GILMAN, Appellee, v. MRS. G. A. HEITMAN and C. W. JACKSON, as Sheriff of Woodbury County, Iowa, Appellants.

**Vendor and vendee:** CONSIDERATION:  RECOVERY OF SAME. The
1 · mere fact that the expressed consideration for a conveyance

represents an inflated or speculative value does not affect the grantor's right to receive the same, or to enforce deferred payment.

**Corporations:** CONFESSION OF JUDGMENT: POWER OF OFFICERS: COL-
2 LATERAL ATTACK. The president of a corporation who has assumed full control of the affairs of the company, with knowledge of the other parties interested therein, has power to confess judgment for the corporation: and the same is not subject to collateral attack except for fraud, lack of jurisdiction, or other defect rendering the same absolutely void.

**Same:** EQUITABLE RELIEF. Where a judgment against a corporation
3 is for a valid indebtedness, equity will not relieve against it in favor of the corporation, or a third party.

**Judgments:** MORTGAGE LIENS: ENFORCEMENT: LIMITATIONS. Where
4 judgment has been entered upon a note secured by mortgage, prior to a limitation of the right of action on the note, the judgment creditor may enforce the lien of his mortgage as against subsequent purchasers, whether the judgment be treated as valid or as a new promise which sets the limitations statute running anew.

**Same.** The holder of a note secured by mortgage may take judg-
5 ment on the note without releasing the lien of the mortgage, and he may subsequently foreclose the mortgage within the life of the judgment.

**Mortgages:** DEBTS SECURED BY SAME MORTGAGE: ACQUISITION OF TAX
6 TITLE BY ONE LIENHOLDER. Where several parties hold notes secured by the same mortgage, one of such lienholders cannot obtain the fee from the mortgagor in extinguishment of his claim, and then perfect his title as against his fellow lienholders by subsequently acquiring a tax title under a lien for taxes which existed at the time he acquired the fee.

**Same:** LIMITATION OF ACTIONS. Where an action is brought to set-
7 tle the rights of lienholders and not to set aside a tax deed to the property acquired by one of the parties, the statute limiting actions for the recovery of real property sold for taxes has no application.

**Attachment:** JURISDICTION OF JUSTICE. The jurisdiction of a jus-
8 tice of the peace in an attachment proceeding against a nonresident is limited by Code, section, 4480, to the county and township wherein the property is found.

**Same:** SITUS OF JUDGMENT. The situs of a judgment in an attach-
9 ment proceeding against a nonresident is the place of its record entry.

Pledges as collateral: WHO MAY ENFORCE JUDGMENT. The pledgor of a note as collateral security may obtain judgment thereon and enforce the same where the pledgee makes no objection.

*Appeal from Woodbury District Court.*— HON. WILLIAM HUTCHINSON, Judge.

WEDNESDAY, NOVEMBER 20, 1907.

REHEARING DENIED MONDAY, FEBRUARY 17, 1908.

THE opinion states the case.— *Reversed.*

*Hubbard & Burgess,* for appellants.

*H. A. McManus* and *Shull, Farnsworth & Sammis,* for appellee.

WEAVER, C. J.— The facts in this case are numerous and complicated, and it is difficult to state them with any degree of clearness, except by tracing the various material events in the history of the controversy in their chronological order.

On January 20, 1888, one Atwood sold to the defendant Mrs. G. A. Heitman certain lots in Sioux City, Iowa, for the expressed consideration of $5,000. The deed, at the request of Mrs. Heitman, was made to Lillie M. Wood, who was her employé, and seems to have taken the title in trust for the use of said purchaser. The reason why the conveyance was made to Wood, instead of Heitman, the real purchaser, is the subject of considerable inquiry and animadversion by counsel, but the truth concerning that matter is not of great importance in determining this appeal; though we find nothing to impeach the good faith of the transaction. Soon after the purchase was made, Mrs. Heitman went into possession of the property, and occupied it until late in the year 1889. At this time the city of Sioux City was the scene of a very remarkable real estate speculation, in which the market values of property were exaggerated to an un-

natural degree, and many enterprises were being undertaken which subsequently suffered a ruinous collapse. In September, 1889, Mrs. Heitman sold and caused the said Lillie M. Wood to convey the said property to a corporation known as the Sioux Automatic Refrigerating Company, for the purpose of establishing thereon a cold-storage plant. The stock of the refrigerating company was owned largely, if not entirely, by one O. C. Tredway and Elizabeth B. Tredway, his wife. The corporation seems to have been conceived, brought into existence, and managed by O. C. Tredway, who was a friend and to some extent adviser of Mrs. Heitman. He negotiated with Mrs. Heitman for the purchase of these lots for the use of the corporation at the agreed price of $20,000. No part of this price was in fact paid, but said O. C. Tredway gave to Mrs. Heitman therefor his two personal notes of $10,000 each, and as collateral thereto delivered to her two other notes executed by one S. T. Davis for $10,000 each. After obtaining title to the property, the refrigerating company built thereon a cold-storage plant at the alleged cost of $60,000. After the property had been thus improved, and on December 29, 1891, the corporation made its four notes of $10,000 each to Elizabeth B. Tredway, and gave her a mortgage thereon to secure the payment of the same, which mortgage was duly recorded on January 2, 1892. This mortgage and the notes secured thereby appear to have been made, not to secure any actual indebtedness owing to said Elizabeth B. Tredway, but were given to her in trust to enable her to make use thereof in raising money or otherwise obtaining funds to meet the demands upon the corporation. Soon after their execution, the Tredways took the note first maturing under this mortgage to Mrs. Heitman, and gave the same to her in exchange for one of the $10,000 notes given to her by O. C. Tredway upon the purchase price of the property, and she surrendered to them the last-named note, together with one of the Davis collateral notes. In other words, one of Tredway's notes representing

one-half of the purchase price of the property was paid by the delivery to the payee of the note of the corporation for a like amount secured by the mortgage to which reference has been made. Later, O. C. Treadway substituted another $10,000 note signed by himself for the remaining Davis note for a like amount held by Mrs. Heitman as collateral.

At that stage in the history of the proceedings Mrs. Heitman held the note of the refrigerating company for $10,000 secured by the mortgage and Tredway's personal note for $10,000, with an additional personal note of Tredway's for a like amount; the latter representing no actual indebtedness and held as collateral so called. In October, 1893, Mrs. Heitman borrowed $1,500 from Burke Bros. in Chicago, and put up as collateral thereto several notes, among which were the notes we have above described, one for $10,000 executed by the refrigerating company, and the two personal notes of O. C. Tredway for $10,000 each. On December 4, 1893, the taxes being delinquent thereon, the county treasurer sold the property in controversy at tax sale to the plaintiff herein, D. T. Gilman. On December 27, 1894, the Tredways borrowed about $10,000 from the plaintiff Gilman, and as collateral security for the debt thus contracted turned over to Gilman the three remaining $10,000 notes of the refrigerating company, secured by the mortgage of December 29, 1891. On July 2, 1895, Elizabeth B. Tredway obtained a sheriff's deed of the property in controversy upon a sale made thereof by virtue of an execution upon a judgment theretofore rendered against the corporation in favor of a stranger to this action. On April 9, 1898, the Tredways united in conveying the mortgaged premises to plaintiff D. T. Gilman by warranty deed, excepting from the covenants of warranty the taxes, liens, and incumbrances of record. Upon receiving said deed, the plaintiff went into and has ever since retained possession of the property. The consideration for this conveyance to plaintiff was the cancellation of the obligation which the Tredways had given to

him for the loan of about $10,000 above mentioned. The note which had been given for this loan was then surrendered to the Tredways, but, for some reason not explained, plaintiff did not turn over to them the three $10,000 notes which he had received as collateral security for the payment of the former. When plaintiff took the Tredway's deed for the property, he knew of the existence of the mortgage securing the four $10,000 notes, but says he was informed by Tredway that the first of the series was not a lien upon the property, but, if it were a lien, he, Tredway, would take it up. On February 21, 1899, Gilman applied to the county treasurer and obtained a tax deed himself for the mortgaged property under the sale which had been made to him as aforesaid December 4, 1893. On January 7, 1900, the refrigerating company, by O. C. Tredway as president, confessed judgment in favor of Mrs. Heitman in the sum of $10,000, with interest thereon according to the terms of the first note of the series of four which were secured by the mortgage of December 29, 1891. This confession was entered in the office of the clerk of the district court of Woodbury county. The plaintiff was not in any way a party to this proceeding, but learned of the confession of judgment shortly after it was made. On November 21, 1904, execution was issued on this judgment and levied upon the property. Notice of the levy was served on the refrigerating company only. A sale was had under such levy, but, before a delivery of the certificate thereof was made to Mrs. Heitman, plaintiff begun this action in equity, making Mrs. Heitman and the sheriff defendants, and procuring a temporary injunction which arrested further proceedings at that point. The plaintiff alleges that he is the owner of the property free of the lien of the mortgage, and bases his claim of title on his tax deed. Shortly after the beginning of this action, plaintiff transferred the three $10,000 notes in his hands to his son, W. S. Gilman, who brought another action to recover thereon and to foreclose the mortgage.

This action was subsequently consolidated with the one brought by D. T. Gilman. As counsel for appellee in this court abandon any claim thereunder, we shall not further consider it.

The defendant Mrs. Heitman takes issue upon plaintiff's petition, asserts the existence in her favor of a lien upon the property in controversy, and asks that the same may be enforced in this action. She also denies the validity of the tax deed upon which plaintiff bases his claim of title. By way of reply to the cross-demand of the defendant, the plaintiff asserted his claim of title to the property and the validity of his tax deed, and alleges that Mrs. Heitman is not the owner of the alleged confession of judgment in her favor, but that the same has been sold under legal proceedings to a third person. This last allegation is based upon the following state of facts: One Buckley, an attorney residing at Sloan, Iowa, took an assignment of a claim held by a third person upon an open account for goods alleged to have been sold to Mrs. Heitman, who at this time was a resident and citizen of the State of Illinois. Buckley thereupon brought an action against Mrs. Heitman before a justice of the peace in Sloan township, Woodbury county, and procured a writ of attachment which it is alleged he caused to be levied upon the judgment entered in Mrs. Heitman's favor by confession against the refrigerating company as hereinbefore stated. Mrs. Heitman was not personally served with notice of this proceeding, nor did she appear thereto either in person or by counsel, but service was had or attempted by posting notices under the statute providing for actions in attachment against nonresidents before justices of the peace. On this service the justice rendered a judgment *in rem* in favor of Buckley, and issued a special execution thereon for the sale of the judgment alleged to have been levied upon. Under this writ, the constable offered the judgment for sale, and the same was struck off to one Atkins for the sum of $113. The good faith of this transac-

tion is challenged by the appellant on the theory that the proceeding by Buckley and the sale of the judgment were, in fact, instituted and brought about for and in the interest of plaintiff.   She also alleges that such proceeding was without jurisdiction, and that the pretended judgment, levy, and sale are void.   After hearing the evidence, the trial court found the equities to be with plaintiff, and a decree was rendered confirming his claim of title, and denying the relief asked by the defendant.   From this decree, the defendant appeals.

As the burden is on the appellee to make good his claim, we will proceed to consider the several propositions advanced by counsel in his behalf.

I.   It is said that Mrs. Heitman was never the holder in good faith of the $10,000 note in controversy, and never gave anything of value for it.   This claim is not well

1. VENDOR AND VENDEE: consideration: recovery of same.

founded.   It would be profitless to rehearse all the complicated details of fact which make up the record in this case.   After a full and careful examination thereof, we find it shown without substantial dispute that in equity at least appellant became the owner of the property in the year 1888, and occupied the same as a home for more than a year and a half, when she conveyed or caused it to be conveyed to the refrigerating company.   It may be true that the expressed consideration for this conveyance represented an inflated or speculative value, but such fact in no manner affects appellant's legal right to receive the same, or to enforce the deferred payment thereof.   It clearly appears that no part of this purchase price has, in fact, been paid, and the note in the appellant's hands represents a part of that price.   If she is not now entitled to enforce the note or the judgment which was confessed thereon, it must be for some reason other than want of consideration therefor or defect in her title thereto.

II.   The appellee denies the validity of the judgment confessed in favor of the appellant on several grounds.   It is

first said that O. C. Tredway, who acted for the corporation

2. CORPORATIONS: confession of judgment: power of officers: collateral attack.

in making such confession, was not authorized so to do. It appears that said Tredway was on the date in question the president of the corporation, or, at least, he was the person who had been last elected to that position, and, if we may credit the undisputed testimony in that regard, he was the general manager and had or assumed to have full control of all of the corporate business. The rule of the authorities seems to be that authority to confess judgment on behalf of a corporation may be expressly conferred upon its executive officer or the general powers conferred upon him and exercised by him may be so broad and comprehensive that authority to make such confession will be inferred. See Clark & Marshall on Private Corporations, section 264. Such officer may. without express authority perform all acts which are incident to the execution of the trust reposed in him, and which custom or necessity imposes upon the office. In *Ford v. Hill,* 92 Wis. 188 (66 N. W. 115, 53 Am. St. Rep. 902), it was held that the authority of an officer of a corporation to confess judgment for the corporation may be inferred from the fact that such act was known to the corporation, and from the further fact that the officer was, in fact, in the habit of practically exercising the whole power of the corporation with the knowledge of the other persons interested therein. This, as we have already seen, was practically the relation held by O. C. Tredway to the refrigerating company, and we think his authority to confess judgment cannot be questioned in this proceeding.

Objection is also made to the sufficiency of the statement upon which the confession of judgment was made, but we think the same fairly complies with the spirit and the letter of the statute by which confessions of judgments are authorized. It is also to be remembered in this connection that judgments by confession, like other judgments, are not open to collateral attack, unless it be upon the ground of

fraud or want of jurisdiction, or other reason which renders the same wholly void and inoperative. 1 Black on Judgments (2d Ed.), sections 245, 246, 252; *Miller v. Clarke,* 37 Iowa, 325; *Twogood v. Pence,* 22 Iowa, 543.

If a judgment against a corporation is just or founded upon a valid indebtedness equity will not relieve such corporation against it, though the officer who made the confession acted without express authority (*Ford v. Hill, supra*); and, if such relief will not be granted upon the prayer of the corporation, we think that for a still stronger reason the courts will not interfere to set aside such judgment in behalf of a third party. Indeed, counsel for the appellee in their brief filed in this court admit that the confessed judgment is good and valid as between the parties thereto, and, if such be the case, we think it necessarily follows that, at least in the absence of fraud or collusion, it must be held valid against collateral attack in a proceeding of this kind.

3. SAME: equitable relief.

III. Appellee also relies upon the benefit of the statute of limitations. In view of our holding in the preceding paragraph, that the confession of judgment is regular upon its face and cannot be collaterally attacked in this action, this objection is no longer available, for the judgment is not barred, and execution may be issued thereon at any time within twenty years from the date thereof. Code, section 3447. Appellee seeks to avoid the effect of this view upon the theory that title to the property upon which the mortgage was a lien, having passed to the plaintiff before the confession of judgment, such judgment, even though it may be valid as against the refrigerating company, does not have the effect to revive or extend the lien of the mortgage. This contention is opposed to all of the previous holdings of this court, and is practically without support in the decisions of any of the courts of this country. If there be any exception, we think it will be found in jurisdictions

4. JUDGMENTS: mortgage liens: enforcement: limitations.

only where the application of the general rule is prevented by some statutory enactment. In *Kerndt v. Porterfield,* 56 Iowa, 412, the question presented was whether a new promise of a mortgagor would have the effect to remove the bar of the statute of limitations as against subsequent liens taken before the mortgage became barred, and not foreclosed until after the revival of the indebtedness. This inquiry we there answered in the affirmative. That ruling has since been followed in *Bank v. Woodman,* 93 Iowa, 668; *Hellmen v. Kiene,* 73 Iowa, 448; *Freeburg v. Eksell,* 123 Iowa, 464. In the *Freeburg* case above cited we also held that, when a note secured by a mortgage is reduced to judgment, it operates to suspend the running of the statute of limitations, and the right to have the mortgage foreclosed is not barred so long as the debt secured thereby may be enforced. *Sigworth v. Meriam,* 66 Iowa, 480; *Stanbrough v. Daniels,* 88 Iowa, 318. In *Kerndt v. Porterfield, supra,* the question is suggested, but not decided, whether one acquiring an interest in mortgaged property after foreclosure of the mortgage is barred by the statute and before a new promise is made would hold by rights superior to the mortgagee after his debt is revived by a new promise. Since that time it has been held that under some circumstances, where an innocent purchaser for a valuable consideration takes conveyance by warranty deed in which the mortgagee joins as a grantor he takes the title free from the lien of the mortgage which the record shows to have been barred by the statute, and that a new promise thereafter made by the mortgagor will not revive the mortgage as against such grantee. *Jenks v. Shaw,* 99 Iowa, 604. But, whatever may be the general rule in this respect, in the case before us the confession of judgment was entered some two years before the statute of limitations had intervened, and whether we treat such confession of judgment as being regular and valid for the purposes of this case, or if invalid, and we give it effect simply as a new promise which set the statute running anew,

we have a situation which is within the rule of *Kerndt v. Porterfield, supra,* and other cases to the same effect decided by this court to which reference has been made.

Counsel for appellee lay down the proposition that the confession of judgment was valid as between the refrigerating company and the appellant, and that the note on which such confession was made was thereby merged in the judgment so confessed. From this premise it is argued that the lien of the mortgage was removed from the property. We are not able to understand the theory upon which this conclusion is drawn. The holder of a note secured by a mortgage may take judgment upon the indebtedness at law without thereby waiving or releasing the lien of the mortgage, and may subsequently, if he sees fit, bring his action to foreclose such lien within the life of the judgment thus procured. See *Freeburg v. Eksell, supra,* and cases there cited. The record before us discloses no peculiar fact or circumstance which prevents the application of this rule.

5. SAME.

IV. In his petition, the appellee bases his claim of title to the property solely upon the tax deed to which reference has been made. It will be remembered, however, from the statement hereinbefore made, that about a year before obtaining this tax deed appellee took the title to the property in controversy by warranty deed from Tredway and wife, excepting, however, from the covenants of warranty in such conveyance all tax liens and the time for redemption from tax sale to the appellee had not then expired. He also took the title with notice actual, if not constructive, of the mortgage under which the appellant claims and of the fact that it was made to secure a note of $10,000 which had not been turned over to him. He testifies that he took such conveyance to wipe out a debt of about $10,000 owing him by the Tredways, and that he went into and has since been in possession of the

6. MORTGAGES: debts secured by same mortgage: acquisition of tax title by one lienholder.

premises.    Under such circumstances, we regard it as a set-
tled proposition of law and equity that appellee could not
hold such title and take to himself a tax deed upon a lien
which attached to the property at the time of his purchase,
and thereby eliminate the rights and interests of the holders
of other incumbrances which also then existed upon the same
property.    *Lane v. Wright,* 121 Iowa, 376; *Fair v. Brown,*
40 Iowa, 209; *Rice v. Nelson,* 27 Iowa, 148; *Garrettson
v. Scofield,* 44 Iowa, 37; *Manning v. Bonard,* 87 Iowa, 648;
*Cowdry v. Cuthbert,* 71 Iowa, 733.    It will be remembered
from the statement of facts that of the four $10,000 notes
secured by the mortgage made by the refrigerating com-
pany appellant became the holder of the first of the series
in her own right, and the appellee subsequently became pos-
sessed of the other three as collateral to the debt owing him
by the Tredways.    In that situation, the appellee and the
appellant are to be regarded as mortgagees each being se-
cured by the same mortgage in the order of the maturity of
the several notes.    While that relation existed, it is an ele-
mentary proposition that neither mortgagee could destroy
the lien of the other by obtaining a tax title to the land which
was their common security.    If such be the case, then, cer-
tainly the mortgagee who takes the legal title and comes into.
possession, and thereby becomes under legal obligation to
pay the taxes upon the property, is in no better position to
profit himself at the expense of his fellow lienholders by
taking to himself a tax title.    In the *Lane* case above cited
we said:   " We regard it a well-settled proposition under
the decisions of this court that, where several persons hold
claims which are liens upon the same land, equity will not
permit one of the lienholders to absorb the common fund
by purchasing the land at tax sale.  .  .  .   Equity will
not permit him to acquire the title for an inconsiderable
sum when he was authorized to remove the trifling incum-
brance by redemption.    Though not bound to pay the tax,
yet it was his right to do so to protect his own liens.    He

cannot obtain that protection by pursuing a course which will deprive the mortgagee of his security." Again, in the same case, we said: " The principle which involves the rule denying the right of one lienholder to obtain a tax title to the disadvantage of others in similar relation to the common security seems to be that as the law gives each of them the right to protect the security by making a redemption, and gives the redemptioner a preferred security to the extent of his disbursement for that purpose, it would be inequitable to permit him to waive such right, and become a purchaser at the sale, and thus, by an expenditure not greater than would have been required to pay the taxes, exclude his fellow lienholders from all participation in the common fund: The proposition seems to be entirely just, while the opposite rule would often bring about manifestly inequitable results."

The appellee took title to the land in satisfaction of his own lien thereon, and became, in effect, and as to other existing lienholders, the mortgagee in possession of the mortgaged property. He also took such title, as we have seen, with knowledge that this note on which the confession of judgment was made was then outstanding, contenting himself, according to his own statement, with the assurance of Tredway that he would take it up. Under such circumstances and under the express form of the conveyance by which he took the title subject to all recorded liens and incumbrances, it is certainly equitable to hold that the tax deed had no effect to eliminate the mortgage lien securing the indebtedness to the appellant.

Nor do we think this is a case in which the appellee may avail himself of the statute of limitations protecting 7. SAME: tax deeds. Code, section 1448. The appel- limitation of actions. lant does not seek to recover the property sold for nonpayment of taxes, nor to set aside the tax deed. The effect of her demand for relief is that in settling the rights of the parties with respect to their several liens or securities the taking of the tax deed by the appellee

shall be treated for the purposes of the case only as a payment of the taxes. It has already been held by this court that in an action which does not attack the validity of a tax sale or deed as such, but questions the right or capacity of a person claiming title under such deed to acquire title thereby to the prejudice of others, is not barred under the provisions of this section. *Sorenson v. Davis,* 83 Iowa, 405. Where such title is acquired by one lienholder, it will be held to have been taken in trust for the benefit of his fellow lienholders, as well as himself. *Phillips v. Wilmarth,* 98 Iowa, 32; *Van Ormer v. Harley,* 102 Iowa, 158; *Austin v. Barrett,* 44 Iowa, 488; *Leach v. Hall,* 95 Iowa, 611; *Moy v. Moy,* 89 Iowa, 511. It is true that in most of the cases here cited the rule has been applied to tenants in common in the title to the lands, but the equities are as clearly persuasive between persons holding liens upon a common security. Whether the conceded or proved circumstances in this case are such that the appellant is equitably bound to reimburse or contribute to the reimbursement of the appellee for the taxes which have been paid by him is a question which is not presented in the record or in the argument of counsel, and we do not undertake to pass upon it.

V. In the printed brief for the appellee, the proposition is stated that appellant can obtain no relief in this action because the judgment confessed in her favor has been regularly levied upon in attachment proceedings, and sold to satisfy a claim existing against her, and that she is therefore no longer the owner of said judgment. Except the bare statement of this claim, the brief is wholly silent, and we are not referred therein to the reason or foundation of the claim thus stated. We are of the opinion, however, that upon the face of the record it is clearly shown that the justice of the peace before whom the proceedings were instituted obtained no jurisdiction to render the judgment, and that the special execution issued by said justice conferred no authority upon the con-

8. ATTACHMENT: jurisdiction of justice.

stable to sell the judgment. By Code, section 4480, actions before a justice of the peace aided by attachment may be brought against nonresidents of the state in any county or township where any property sought to be levied upon is found. The township of Sloan, in Woodbury county, is distinct and remote from the township in which the county seat and the office of the clerk of the district court are located. The property upon which the judgment was sought to be levied was not then and never had been in Sloan township. Prior to the adoption of the present Code, the corresponding section of the statute, after stating that such actions may be commenced in any county and township where the property is found, contained the added words, " and justices shall have jurisdiction therein within the county." While the statute existed in this form, decisions of this court construing the same appear to have been in confusion. In *Leversee v. Reynolds,* 13 Iowa, 310, it was held that this last phrase had the effect to enlarge the jurisdiction of the justice in such actions, and make it coextensive with the county, regardless of the township in which the property was found. In *Meunch v. Breitenbach,* 41 Iowa, 527, that rule was reversed, and it was held that an action against a nonresident aided by attachment must be brought in the township where the property is found. Later, in the case of *Knowles v. Picket,* 46 Iowa, 503, the case last cited appears to have been overruled and the precedent made by the *Leversee* case followed. Still later, in *Anderson v. Railroad Co.,* 77 Iowa, 445, the question was again before the court, and the theory announced in the *Meunch* case appears to have been approved, though the precedents are not discussed.

The condition disclosed by these holdings is such that, were the statute unchanged, we should have some difficulty in determining the correct rule to be followed, except as we might derive the same from an original construction of the language of the act, but it will be noticed that the statute

in its present form omits entirely the words, " and justices shall have jurisdiction therein within the county," upon which the *Leversee* case and *Knowles* case were chiefly made to turn. As the section now stands, it provides: " Actions aided by attachment may be brought against nonresidents of the state in any county and township wherein the property sought to be levied upon is found and any action against such nonresidents may be brought in any county wherein any defendant is served with notice thereof." This language in express terms limits the jurisdiction of a justice in an attachment of property of a nonresident to the county and township wherein the property is found. There are good and manifest reasons why such rule should have been enacted, and the language is too direct and explicit to call for any construction. The objection thus raised to the validity of the proceedings before the justice goes to the jurisdiction of that court, and therefore may be raised in this proceeding.

Some question is raised in oral argument as to what is the situs of a judgment for the purposes of this discussion.

**9. SAME: situs of judgment.** We find no authority directly in point, but it seems to be established that, for purposes of administration, it has been held that a judgment is an asset at the place where record thereof is found. See 13 Am. & Eng. Ency. Law, 924, and note. And, while such rule may be somewhat arbitrary, it is perhaps as nearly accurate as the nature of the property will admit. We can conceive of no theory upon which we may say that a judgment which has been entered in the office of the clerk of the district court has a situs for the purposes of attachment or for any other purpose in every township in the county. It has frequently been held that a judgment duly entered is in the nature of a contract of record. *Spilde v. Johnson,* 132 Iowa, 484. It is also a well-established rule that, where debts are evidenced by a written instrument, the situs of the property therein is the place where the instrument is

held or found, and, by analogy to the rule applied in cases of like character, we think it may fairly be said that the situs of a judgment for the purposes of the statute now under consideration shall be held to be at the place of its record entry.

VI.  Finally, the appellee insists that, as appellant pledged the note under which she claims to Burke Bros. to secure her own indebtedness, she had no such

**10. PLEDGES AS COLLATERAL: who may enforce judgment.**

title or interest therein as would enable her rightfully to obtain the confession of judgment and to assert any right under said note or judgment against the appellee in this action.  Appellant never ceased to be the equitable owner of the note.  It is true she passed the legal title and right to possession of said note to Burke Bros. to be held as security for the payment of her own debt.  If, as between them, she was permitted to proceed and obtain judgment upon the note against the refrigerating company, it in no manner prejudiced the rights of other lienholders or of the holder of the legal title to the mortgaged property.  It is very possible that Burke Bros. would have the right to step in and claim the benefits of the judgment so rendered had they elected so to do.  The circumstances under which this confession of judgment was taken in the name of the appellant instead of the names of the pledgees, are the subject of much discussion by counsel, and we think, for the purposes of this action, it is immaterial to determine or consider what may be the equities as between these parties.  The appellant does not deny the validity of the pledge made by her, and the pledgees, although evidently having notice of her act in obtaining judgment, are not here making any objection thereto.  Under such circumstances, the existence of the pledge is not a matter of which the appellee can avail himself to resist the enforcement of the lien against the mortgaged property. *Bank v. Cannon*, 46 Minn. 95 (48 N. W. 526, 24 Am. St. Rep. 189).

We have now touched upon all the points made in argument which we deem material to the disposition of this appeal, and the conclusions we have hereinbefore stated lead us as a necessary result to the reversal of the decree of the district court. Many other points have been presented by counsel, but, as those we have mentioned involve the ultimate merits and their decision is controlling, we cannot reasonably prolong the discussion. The case will therefore be remanded for further proceedings not inconsistent with this opinion. — *Reversed.*