J. S. Proctor, Appellee, v. W. A. Williamson et al., Appellants.

October 18, 1927.

Rehearing Denied January 20, 1928.

*Jones, White & Bekman,* for appellants.

*W. W. Rankin,* for appellee.

Morling, J.—Plaintiff was the owner of two properties in Ottumwa, one called the "West End property," and the other the "Woodland Avenue property." The subject of this suit is the Woodland Avenue property only. The sheriff's deed attacked was executed to defendant Williamson. Defendants make no claim under the sheriff's deed, and no complaint of that portion of the decree setting it aside. That deed will, therefore, have only incidental consideration. The first tax deed involved was executed December 1, 1923, to defendant Williamson, on a certificate assigned to him by defendant L. A. Andrew. Williamson afterwards quitclaimed to Andrew, so that Williamson is out of the case. The second tax deed was executed March 9, 1926, to defendant Andrew, on a second tax sale to him. The defendants in interest are L. A. Andrew and the Citizens Savings Bank of Ottumwa, of which he is president.

On March 24, 1917, plaintiff made to defendant bank a mortgage of both properties for $400, due March 24, 1918, with 8 per cent interest. At the date of this mortgage, Mr. Andrew held tax-sale certificate on the Woodland Avenue property, obtained at the December, 1916, tax sale. On March 24, 1917, there was also outstanding against the Woodland Avenue property a first mortgage held by Lindberg. The first mortgage was foreclosed and the property sold October 26, 1918. The sheriff's certificate thereon was outstanding September 18, 1919. Creditors' right of redemption had expired. On that date (September 18, 1919), plaintiff and wife executed a mortgage on the Woodland Avenue property to defendant bank for $1,705. Plaintiff's contention is that that mortgage was given to take up the sheriff's certificate of sale and the tax certificate held by Mr. Andrew, and that the balance of the $1,705 was to be applied on the $400 mortgage covering both properties. The defendants' contention is that the $1,705 mortgage did not include the amount of the tax certificate, but was given to take up the sheriff's certificate of sale and pay the $400 mortgage and expense of making the loan. None of the witnesses says that computations were made between the parties when the mortgage was made, amounting to $1,705 or any other sum. The plaintiff gives no explanation for the adoption of the peculiar amount, $1,705. According to his evidence, the amount to be paid on the $400 mortgage was indefinite. Hence the $1,705, on the plaintiff's theory, did not result from a computation. Mr. Andrew and the cashier testify that the $1,705 was made up of the amount due on the sheriff's certificate, $1,215.32; amount of renewal note for $455 represented by the $400 mortgage; additional interest thereon, $11.72; revenue stamps, 36 cents; recording mortgage, $1.35; notary fee, 25 cents; and abstract fee, $21. The correctness of these figures is not denied. Plaintiff testifies that he asked Mr. Andrew to make a loan so as to include the amounts of the sheriff's certificate and the tax-sale certificate; that Andrew wanted a payment on the other mortgage, "as it was too heavy a loan." He says: "Mr. Andrew was to cancel his tax certificate when I gave the mortgage for $1,705." The evidence respecting the likelihood of placing continued reliance for security on West End property is very meager. There is none as to its value or its condition as to incumbrances, except that plain-

tiff testifies that he had sold it in July, 1917, and had paid up the interest and taxes to date; that Andrew "assigned that tax certificate that was on the West End property that he was supposed to pay off to Delmar VanWinkle, and took a tax deed in the name of VanWinkle." Andrew testifies that the value of the West End property was rapidly depreciating, and that there was an outstanding tax certificate which he did not then hold. The certificate was originally issued to him. The bank considered that there was little or no equity in the West End property, and since the $1,705 mortgage was issued, has made no claim on the $400 or $455 note.

It is to be observed that plaintiff further says that:

"The $1,705 mortgage was supposed to pay off everything against the Woodland Avenue property * * * the indebtedness was all to be taken off the Woodland Avenue property."

This would require either full payment or a partial release of the $400 mortgage. Plaintiff makes no complaint that the $400 mortgage was to be, but was not, released as to the Woodland Avenue property.

Plaintiff called Mr. Andrew as a witness, who, testifying in plaintiff's behalf, says that plaintiff "came into the bank * * * That the holder of the sheriff's certificate of sale would soon get a deed; that he expected to have a deal made in a short time to sell this property, and he wanted to know if I wouldn't help him out by advancing enough money on the Woodland Avenue property to take up the Lindberg [sheriff's] certificate of sale, and include the amount due upon the mortgage against the West End property, which I had been complaining about as not being sufficient security for the other note." Andrew says that he had an agreement with plaintiff, when the $1,705 loan was made, that the $400 (or $455) note, with interest, should be paid out of the $1,705. The amount then required to pay off the tax-sale certificate on the Woodland Avenue property was $301.13.

The attorney foreclosing the Lindberg mortgage, also a witness for plaintiff, says that Lindberg and plaintiff "were in my office, talking over the matter of redemption from this sale. Mr. Proctor stated that he was to obtain a loan from the Citizens Savings Bank to take up Mr. Lindberg's certificate, less about $40 that Mr. Lindberg was to discount for costs, and the

new mortgage to the Citizens Savings Bank was to include a second mortgage which. the Citizens Savings Bank held on the Woodland Avenue property, and which would be cut off in the Lindberg foreclosure action. * * * I know that the mortgage that Mr. Proctor was to give to the Citizens Savings Bank was to include in some way the $400 mortgage which the Citizens Savings Bank held as a second mortgage against the Woodland Avenue property."

Thus plaintiff, in making his own case, left the question, to say the least, in doubt, with the burden of proof on himself.

The abstracter testifies that he returned the abstract to Mr. Andrew October 17, 1919; that "Mr. Proctor subsequently returned the abstract to me. He stated that he was attempting to procure another loan, to take up the loan made by the Citizens Savings Bank * * * Two or three years later, he again came into my office, and told me that he must have a new loan, because of a tax deed about to be issued, and he was then making another effort to get a loan, to take care of the amount due on the tax certificate."

The notice of expiration of time for redemption from the first tax sale was filed August 31, 1923. The tax deed is dated December 1, 1923. Plaintiff was then, therefore, apparently recognizing the fact that the tax sale certificate was not to be paid through the mortgage. His petition in this action was filed January 14, 1924. In that he alleged that Andrew, in furtherance of a scheme to avoid foreclosure and to defeat the right given plaintiff by statute, "purchased said property at tax sale, and was issued treasurer's certificate therefor, for the unpaid taxes thereon for the years 1916 and 1918, which said amounts, as plaintiff was advised and believed, were included in the mortgage and note executed by plaintiff * * * in October, 1919, for the sum of $1,705.00." He asks that the tax deed "be set aside, for the reason that, in the note and mortgage executed in October, 1919, by this plaintiff and his wife to the Citizens Savings Bank, was included a sufficient sum, in addition to the amount of the H. S. Lindberg judgment, to repay the defendant L. A. Andrew the sum paid out by him in taxes on said property." There is no allegation of any agreement to pay the tax-sale certificate. That allegation was first made nearly two years after the petition was filed, in an amendment filed December 14,

1925. Plaintiff argues that the bank would not make a loan with a tax-sale certificate outstanding. The tax-sale certificate was held, however, by the president of the bank. The record is:

"It was the understanding with the bank and Williamson and with Andrew that, no matter who held the title to this property, the bank's mortgage was to be protected."

The president of the bank made the loan, advanced the bank's money upon it, and not only could not obtain a hostile title upon a tax certificate then held by him, but the record shows it was understood that the mortgage was to be protected.

It is further argued that, by taking an assignment of the sheriff's certificate of sale, and by assigning that and later the tax sale certificate to Williamson, and taking sheriff's and tax deed to him, and later another tax deed to Andrew, and the attendant circumstances, the defendants showed their purpose to deprive plaintiff of his right to a foreclosure and a year for redemption. The evidence seems to sustain this charge. Though the tax-sale certificates were held by Andrew, and not by the bank, they were apparently held, not in hostility to, but in the interest of, the bank. If the plaintiff were basing his case on the incapacity of the bank to take a valid tax title, and that, in substance, the tax deeds were held or controlled by the bank, and implied fraud had been the ground of action, a very different question would have been presented. *Fair v. Brown*, 40 Iowa 209; *Lane v. Wright*, 121 Iowa 376; *Eck v. Swennumson*, 73 Iowa 423; *Gilman v. Heitman*, 137 Iowa 336; *Cowdry v. Cuthbert*, 71 Iowa 733; *Garrettson v. Scofield*, 44 Iowa 35; *Manning v. Bonard*, 87 Iowa 648; *Cone v. Wood*, 108 Iowa 260. No such case, however, is presented in the pleadings. So far as we can discover, the defendants were not apprised of any such case in the court below, and had no day thereon there. No suggestion of such a case is made in the arguments here. The defendants' apparent efforts to bar plaintiff's rights by short cuts might have some bearing upon the credibility of the witness Andrew, had he been their witness. Mr. Andrew, however, was plaintiff's witness, and, though plaintiff is not concluded by Mr. Andrew's testimony, he is not permitted to impeach his credibility. The right of a mortgagor to foreclosure by suit in equity, his right to have the property offered at public auction to the highest bidder, and, in case of parcels and homestead, to have

it offered in parcels, the homestead last, his right to a year in which to get a better price or to make redemption, are valuable rights, of which the mortgagor may not be deprived by such short cuts as seem to be in evidence here. But, as has been stated, the defendants have not had their day in court, either below or here, on such a case as that. The wrongfulness of defendants' conduct in such respects is not evidence of the existence of the express agreement upon which plaintiff founds his case. The alleged express agreement to pay the tax-sale certificate out of the $1,705 loan has not been proved.

This conclusion renders it unnecessary to consider other questions argued.—*On plaintiff's appeal affirmed; on defendants' appeal reversed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.