## WILLIAM F. THAYER *v.* FRANK H. HARTMAN.

1. COURTHOUSE. *Board of supervisors. Power to designate. Code* 1892, § 306. *Tax sales, place of.*

   The courthouse having been destroyed, a tax sale made at a building in the county seat, under an order of the board of supervisors of the same date designating it as the courthouse and the place where tax sales should be made, is not void because not made at the courthouse, under code 1892, §§ 3811, 3813.

2. TAX SALES. *Purchaser. Previous claim of ownership.*

   That the purchaser at a tax sale had bid the land off at an execution sale two years previously does not, the execution sale having been vacated, preclude him from acquiring title under his tax deed.

FROM the chancery court of Lincoln county.

HON. HENRY C. CONN, Chancellor.

Hartman, the appellee, was complainant, and Thayer, the appellant, was defendant in the court below. The opinion states the facts.

*McWillie & Thompson*, for appellant.

Were the lands sold at the courthouse? At the March, 1894, meeting (the day of the tax sale), the supervisors awarded a contract for rebuilding the courthouse on the old site, and on the same day they entered an order directing sales to be made that day in front of the building, in which the board had provided temporary quarters for the chancery clerk, the basement of which was occupied by one Abrams as a store. The order has for its caption, "Order designating place for sale of tax lands," and concludes: "Said building shall be, and the same is hereby, designated as the courthouse of Lincoln county until further ordered by the board."

The place so designated was remote, three or four hundred feet from the Masonic hall, where the preceding term of

the circuit court was held, and six hundred feet from the court-house site. The view of both places from the Abrams store building is and was obstructed by houses, all these points being in a thickly built up and populous city. An execution sale of lands not made at the courthouse is void. *Koch* v. *Bridges*, 45 Miss., 247. Our constitutional provision on the subject of tax titles (constitution 1890, sec. 79) was not designed to place tax titles on a higher plane than execution sales.

Under the law, code 1892, §§ 3811, 3813, tax sales must be made at the door of the courthouse of the county. Such sales are advertised to take place there. The order pretending to designate the Abrams building as the place for tax sales was passed on the day the sales were to be made, and, of course, after the sales had been advertised fixing the courthouse door as the place of sale, and to which place bidders and taxpayers were invited.

When the advertisement was made (and concluded) the Abrams building was certainly not the courthouse. There is a good deal of difference between an advertisement deliberately naming a place for a sale to be made and a failure to advertise, or an error in an advertisement. Our code, § 3813, provides that a failure to advertise or an error in the advertisement will not render a tax sale void, but it does not provide for a case in which a place of sale is deliberately named and a sale made elsewhere.

If the board had the power to name the place of sale, and exercised the power so close to the time fixed by law for the sale that the effect of the order could not be known, it would be as bad as if made after sale. Time of sale is no more important than the place, and yet, under § 3850, code of 1892, which gives the board power over the time of sale as therein specified, the board cannot on the day of sale pretermit it (*Brougher* v. *Conley*, 62 Miss., 358; *Clarke* v. *Frank*, 64 Miss., 827), and a tax sale made at a time fixed by the board is void. The fact that the tax deed is *prima facie* evidence does not

affect the same adversely to us.    It is *prima facie* that the advertisement was properly made when it was published.    If it was published according to law (§ 3811, code 1892) it designated the courthouse door as the place of sale, and, *prima facie*, it did this, and at the time of publication the Abrams building was not the courthouse, since the order of the supervisors directing tax sales made there was not passed until the day of the tax sale.

We submit the sale in question was void because it was deliberately and correctly advertised to be made at a place different from where it was made.    Has the board of supervisors power to name or fix the place for making tax sales ?  We think not.    There is no statute authorizing the board of supervisors to remove a courthouse.    It is authorized by the code of 1892, § 306, to provide temporary quarters for holding court if there be no courthouse, or the same be undergoing repairs or be unfit for use.    But the board has no power under the section to make the temporary quarters the courthouse of the county: It cannot authorize execution or tax sales to be made at such temporary quarters.    The power of the board under the section is no greater in case of the burning of the courthouse than in case it be undergoing repairs or be unfit for use, say for want of a roof.    If a courthouse was being repainted, and thus both " undergoing repairs " and " unfit for use," the board of supervisors would not have power under the section to move the courthouse, and if, under the section, the board provided temporary quarters for holding a term of court, the courthouse would remain just where it was before. There is no necessity for a house where the tax sale is made. The law fixes a place, and sale can be made with the house gone.    The place ought to be fixed and beyond the reach of, and not be affected by, temporary conditions.    But in this case there was no effort to remove the courthouse.

The order passed at the March, 1894, meeting, the very day the tax sales were made was designed alone to fix

a place for making tax sales. The board has no power, certainly no direct power, to fix a place for tax sales. The statute fixes the place. The board has no power to remove the place from the point fixed by law. The order does not pretend to direct that the courts of the county shall be held, even temporarily, in the Abrams building. In fact, the three orders of the board show that it was not intended that the courts should be held there.

If the board can by such an order remove the place for execution and tax sales six hundred yards, it could remove it to any point in the town or county. Suppose the order had directed the tax sales to have taken place in front of D. McRee's store, at Caseyville, fifteen miles from the old courthouse, and had provided that McRee's store building "shall, and the same is hereby, designated as the courthouse of Lincoln county, Mississippi, until further orders by the board." Manifestly it would have been void. The order before us is equally void. Six hundred yards is as vicious as fifteen miles. Or, if the illustration be extreme, suppose that the order had been that the tax sale should be made at the front door of Polly Scott's "Last Chance" store, on the Monticello road, just in the eastern edge of the corporate limits of Brookhaven, three-quarters of a mile from the business portion of the town, and that distance from the old courthouse site, and had further provided that "Last Chance" store "shall, and the same is hereby, designated as the courthouse of Lincoln county, Mississippi." Manifestly this order, too, would be void.

Section 306, code 1892, does not authorize a removal of the courthouse, but, if it did, the order in question does not purport to remove it. It simply provides that the Abrams building be designated as the courthouse. It is not made the courthouse; it is only ordered to be designated as such. The designation merely of a building, or a gum tree, as the courthouse, does not make it the courthouse. The facts show that the supervisors did not intend to do anything more than to make an

effort to change the place of tax sales; something they had no power to do. As said before, it was not designed that courts should be held in the building.

The case of *Harris* v. *State*, 72 Miss., 960, establishes that the chancery clerk's office is not the courthouse, and one hundred feet away from the courthouse is not "at the courthouse." What shall we say of a tax sale made six hundred feet away and out of sight in a crowded town or city?

The case of *Longworthy* v. *Featherstone*, 65 Ga., 163, is an authority in point. In that case the courthouse had burned down and the courts were held in a schoolhouse on private premises, and the offices of the county were located at various offices in the town. On the sale day the sheriff went to the old courthouse site and adjourned the sale to a shade on the county's courthouse grounds, a few feet from the old site, and there made it. The sale was held valid, manifestly because the old site was the proper place, and the trifling distance therefrom to the shade where the sale was actually made was immaterial.

*Cassedy & Cassedy*, for appellee.

The courthouse of Lincoln county had been burned in November, 1893. The board of supervisors had rented an office for the chancery clerk, but had failed to provide a courthouse save for one month. The February term of the chancery court, 1894, was held in the office of the chancery clerk, and the sheriff had selected this place as the courthouse of Lincoln county, which appears by reference to the minutes of the chancery court at that term. This selection by the sheriff was made (the board of supervisors having failed to designate such place or any place) under authority of § 306 of the code of 1892, which provides that if the board of supervisors fails to make provision for a courthouse, the sheriff of the county shall do so, or may do so. The fact is, the chancery court was held at this place. At a meeting of the board of supervisors sub-

sequently, on the first day of March, that body designated the same building as a proper place for the sale of lands for taxes, and the sale was made in front of this building.

Section 3811, code of 1892, provides that the sale shall be made (we take it) at the door of the courthouse.

The sale was made at the door of the building designated as the courthouse by the sheriff, and designated as the place for the sale of lands for taxes. The law required the sale to be made at the door of the courthouse, and the board provided that it should be made at the front of the building, thereby fixing it as the courthouse and ratifying the act of the sheriff, who had previously fixed the courthouse at such place. At the courthouse, means where the courts of the county are held. It does not mean the pile of ashes which represent and designate the place where the county courts were once held. There could be and was no door to the charred ruins of the former courthouse. There could be no other place to make this sale except in front of the building or at the door of the building selected and designated by the sheriff as the courthouse, and also by the board of supervisors, and the same place where the chancery court of the county had been held. There had been no order of the board of supervisors changing the place, and until changed by the board, this building was the courthouse of Lincoln county at the time of the sale for taxes, and the sale was made at the proper place.

TERRAL, J., delivered the opinion of the court.

This is a suit in the chancery court of Lincoln county to confirm and quiet a tax title, acquired by the appellee, by a sale made on the fifth day of March, 1894. The appellee relied upon his tax deed, regular in all respects upon its face, and which the statute declares vests a perfect title in the purchaser to the land sold for taxes, subject to the right of redemption.

The appellant assailed the tax deed upon two grounds: (1) Because the sale did not take place at the door of the court-

house of the county; (2) because Hartman, at the time of the sale, made a claim to the land and in consequence of such claim could not acquire a title at a tax sale.

In reference to the alleged ground of invalidity of the purchase by Hartman, because he claimed some interest in the land, it appears that Hartman some two years prior thereto, purchased at execution sale the same lands, but it also appears that said execution sale had been set aside and vacated by the circuit court from which it issued. We are of the opinion that such matter was too airy and unsubstantial to preclude Hartman from purchasing the land at tax sale.

In relation to the objection to the validity of Hartman's purchase at tax sale touching the place of the sale, it appears from the record that the courthouse of Lincoln county was entirely destroyed by fire on the sixth day of November, 1893; that the November term (1893) of the circuit court of that county was held in the Masonic Hall in the city of Brookhaven, which hall was rented for one month only, for that purpose. It further appears that offices for the sheriff and circuit clerk were provided in Storm's building, and that an office for the chancery clerk of said county was provided by the board of supervisors of said county over the store of R. Abrams, in Brookhaven.

In this chancery clerk's office the board of supervisors held their meeting in March, 1894, and at that meeting on Monday, the fifth day of March, 1894, the board passed an order directing the sale of lands delinquent for taxes to be made at the door of the office of the clerk of the chancery court of Lincoln county, Miss., on Cherokee street, in Brookhaven, the lower story of which was then occupied by R. Abrams as a store; and it was further ordered by the board that "said building shall be, and the same is hereby, designated as the courthouse of Lincoln county, Miss." This place so designated by the board of supervisors as the courthouse of Lincoln county, is three or four hundred yards from the Masonic Hall where the November

term (1893) of the circuit court was held under a rental thereof for one month, and is some five or six hundred feet from the site of the courthouse destroyed by fire November 6, 1893.

The court confirmed the tax title of Hartman, and Thayer appeals. The courthouse was entirely destroyed by fire in November, 1893, and it had not been rebuilt when the sale of lands delinquent for taxes occurred, and it became necessary to provide a building to be used as a courthouse until a new one could be constructed. It was the business of the board of supervisors to provide such building, and to designate it for that purpose. Upon a designation of a building to be used as a courthouse of the county, it immediately became such courthouse. Such order of the board designating a building as a courthouse operated at once to make such building the courthouse of the county. It needed no publication or notice of its existence to give it validity; it operated instantly, from the nessity of the case. The power of the board of supervisors to appropriate a building for a courthouse in emergencies of the kind before us is unlimited, and such appropriation operates instantly to make such building the courthouse of the county, and all acts there done, however soon thereafter, are as valid as if sanctioned by immemorial usage.

<em>The decree of the chancery court is affirmed.</em>