COLLINS *et al. v.* WRIGHT *et al.*

(In Banc.   Feb. 12, 1945.)

[20 So. (2d) 837.   No. 35779.]

Harold Cox and Lamar F. Easterling, both of Jackson, for appellant, Roy P. Collins.

696

**Greek L. Rice**, Attorney General, by **W. B. Fontaine**, Assistant Attorney General, for appellants, State of Mississippi and Guy McCullen, State Land Commissioner.

Butler & Snow and Lotterhos, Travis & Dunn, all of Jackson, for appellee, Junior O'Mara.

Robert L. Genin, of Bay St. Louis, J. R. Buchanan and Roy P. Noble, of Laurel, Walter L. Shows, of Jackson, and John T. Armstrong, of Hazlehurst, for appellees.

704

706

Argued orally by **W. H. Cox** and **W. B. Fontaine**, for appellant, and by **J. R. Buchanan, Vardaman S. Dunn** and **Robt. L. Genin**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The decree of the trial court canceled, as a cloud upon the title of the appellees, a tax sale made on September 20, 1932, to the State of Mississippi of the N.E.¼ of the N. E.¼ of Sec. 31, Township 1 North, of Range 13 East, situated in the First Judicial District of Jasper County, for the taxes alleged to be due thereon for the year 1931; and also canceled the forfeited tax land patent from the state, dated December 20, 1943, issued to the appellant, Roy P. Collins, for said land. The validity of the tax sale was assailed by the appellees on several grounds; but in view of the conclusion that we have reached on one of the grounds assigned, viz., that the sale was made

at the wrong place, we deem it unnecessary to consider any of the others.

The proof discloses that the courthouse at Paulding, in the First Judicial District of the county, burned on September 10, 1932; that on September 16, 1932, the sheriff, by written proclamation, designated the two east rooms on the lower floor of the building at Paulding known as the Teachers' Home of the Paulding Consolidated School, as the temporary courthouse, pending action in regard thereto by the board of supervisors, under the authority of section 220, Code 1930, section 2895, Code 1942; that on September 18, 1932, at about 10 o'clock a. m., the board of supervisors convened at the place so designated by the sheriff as a temporary courthouse and caused to be entered an order upon its minutes of that day, which recites the fact that the former courthouse had been destroyed by fire, the issuance of the proclamation by the sheriff, which is set forth at large in said order, and approves the designation made by the said officer of the said two east rooms of the Teachers' Home as ''the courthouse for the present;'' that the place thus designated was located approximately 175 to 200 yards from the former site of the courthouse building which had recently burned; and that due to an obstruction of the view by some other buildings, the site of the ruins of the old courthouse, where the appellees assert that the tax sale was held, could not be seen from the door of the building known as the Teachers' Home.

The proof further discloses, without dispute, that on September 19, 1932, the deputy sheriff conducted the tax sales of land for the first district of said county in front of the concrete steps left among the ruins where the old courthouse had stood, and that he concluded the sales made on that day at some time between the noon hour and 1 o'clock p. m., all at that place, according to the testimony of a witness who was present throughout the time the lands were then being offered for sale. That no sales were made during that afternoon, due to the fact

that someone had suggested to the deputy that the sale was probably being conducted at a place not authorized by law, since the same had been advertised, and was required to be held at the courthouse door. That thereupon the deputy left the place of sale, went to the town of Bay Springs, in the second district of the county, and later, in company with the sheriff, proceeded to the city of Laurel to obtain legal advice as to the proper place for further conducting such tax sale. That these two officials did not return to Paulding before the expiration of the legal hours of sale on that day. That on the next morning, however, the sale was resumed by the deputy sheriff at the ruins of the old courthouse, and was continued at that place, according to the testimony of the sheriff, until some time between the noon hour and 1 o'clock p. m., when he left the premises. And it is fair to assume that the sale had been thus continued at that place on the morning of the 20th day of September pursuant to the legal advice obtained at Laurel, from the attorneys for the board of supervisors, the previous afternoon.

Whether or not any sales were made during the afternoon of September 20th at the door of the newly established courthouse in the Teachers' Home, including the sale of the land here involved, does not affirmatively appear from the evidence introduced at the trial. However, we think that the chancellor was warranted in finding, in the absence of any evidence to the contrary, that if any sales were made during the afternoon of that day, they occurred at the ruins of the old courthouse, pursuant to the legal advice obtained on the day before by the sheriff and his deputy, which was acted and relied upon during the forenoon of that day, as aforesaid, because it would seem altogether unlikely that the deputy would have changed the place of sale from where he had conducted the same that morning to the newly established courthouse without the advice and consent of the sheriff, whose testimony fails to disclose that he knew anything about such change if, in fact, the same was made, and the

deputy did not testify, having. died prior to the trial of this case.

But if we are mistaken in the above conclusion, the trial court was nevertheless sustained in his finding that all of the sales were made at the ruins of the old courthouse, for the reason that such fact was expressly alleged by the amended bill of complaint of the appellees, and this allegation was neither expressly nor by necessary implication denied by the answer of the appellant, Roy P. Collins, to the amended bill of complaint. In fact, his answer avers that the sale was made at the door of the courthouse, "as advertised," and most assuredly it was not advertised to be held at the door of the building known as the Teachers' Home, because such place was not designated by the board of supervisors as the courthouse until the day of sale. Moreover, the answer of said Collins denies that the two east rooms on the lower floor of the Teachers' Home was ever legally proclaimed by the sheriff and designated by said board as the courthouse prior to the tax sale. But the fact that all of the sales were made at the site of the burned courthouse is admitted here by the Attorney General in his brief on behalf of the appellant, the State of Mississippi. And section 380, Code 1930, section 1291, Code 1942, provides, among other things, as follows: "All matters of fact averred in the bill and not denied by the answer otherwise than by the general traverse, may be taken at the hearing as admitted."

Section 3249, Code 1930, section 9923, Code 1942, contains, among other provisions, the following: "Neither a failure to advertise, nor error in the advertisement, nor error in conducting the sale, shall invalidate a sale at the proper time and place for taxes of any land on which the taxes were due and not paid, but a sale made at the wrong time or at the wrong place shall be void."

It is manifest that there can be but one place at which a tax sale can be legally held. Otherwise, prospective bidders would not know where to go. Therefore, if the

sale in the instant case could have been legally held at the newly established courthouse, then a sale held at the ruins of the old courthouse would be invalid. In the case of Thayer v. Hartman, 78 Miss. 590, 29 So. 396, one of the grounds upon which the appellant, Thayer, challenged the validity of the sale there in question, was that it did not take place at the tax door of the courthouse of the county. In that case it appeared that the courthouse of Lincoln county, at Brookhaven, was entirely destroyed by fire on the 6th day of November, 1893; that the November term (1893) of the circuit court of that county was held shortly thereafter in the Masonic Hall in the city of Brookhaven, which hall was rented for one month only for that purpose; that offices for the sheriff and circuit clerk had been provided for in the Storm's Building, and that an office for the chancery clerk of said county had been provided for in the Abrams Building; that the Board of Supervisors held its March, 1894, meeting, in the chancery clerk's office, and at the same meeting passed an order, on March 5, 1894, directing the sale of lands delinquent for taxes to be made that day at the said office of the chancery clerk, and this order further provided that, ''said building (Abrams Building) shall be, and the same is hereby designated as the courthouse of Lincoln County, Mississippi.'' The place thus designated as the courthouse was 300 or 400 yards from the Masonic Hall, where the November term of the circuit court had been held, and was some 500 or 600 feet from the ruins of the courthouse destroyed by fire.

The trial court confirmed the tax title of Hartman, and Thayer appealed to this Court. In upholding the decree of confirmation of the tax sale this Court said: ''The court house was entirely destroyed by fire in November, 1893, and it had not been rebuilt when the sale of lands delinquent for taxes occurred, and it became necessary to provide a building to be used as a court house until a new one could be constructed. It was the business of the board of supervisors to provide such building, and to

designate it for that purpose. Upon a designation of a building to be used as a court house of the county, it immediately became such court house. Such ·order of the board designating a building. as a court house operated at once to make such building the court house of the county. It needed no publication or notice [of its existence] to give it validity. It operated instantly from the necessity of the case. The power of the board of supervisors to appropriate a building for a court house in emergencies of the kind before us is unlimited, and such appropriation operates instantly to make such building the court house of the county; and all acts there done, however soon thereafter, are as valid as if sanctioned by immemorial usage.''

If the tax sale held at the chancery clerk's office in the case of Thayer v. Hartman, supra, was validly held there, then it could not have been validly held at the ruins of the old courthouse of Lincoln County. Under the authority of that decision, ·the tax sale here involved could have been legally held at the door of the building known as the Teachers' Home at Paulding, where the board of supervisors was then in session, and where the business of certain county offices was then being conducted, and it follows that any other place where the tax sale may have· been conducted was the wrong place, and· by the plain terms of our statute, section 3249, Code 1930, section 9923, Code 1942, the sale was null and void.

As for the necessity of a tax sale to be held at the place provided by law, in order to be valid, see, also, Koch et al. v. Bridges, 45 Miss. 247; Vasser v. George, 47 Miss. 713, 721; Miller v. Magnolia Building & Loan Ass'n, 160 Miss. 367, 134 So. 136; Dixon v. Thompson, 52 Ind. App. 560, 98 N. E. 738; Rubey v. Huntsman, 32 Mo. 501, 82 Am. Dec. 143; Hill v. Turnverein Germania, 77 Okl. 242, 187 P. 920; 26 R. C. L., Sec. 358; and 31 Am. Jur. 436.

The appellees derive their title to the land in controversy through John Jones, Sr., deceased, who had been in actual possesson thereof since. the year 1870, and

whose heirs-at-law had continued in such possession from the date of the tax sale in September, 1932, to the trial of the case, according to the finding of fact made by the chancellor, and which is sustained by the evidence.

The decree of the trial court, which canceled the tax sale as a cloud upon the title of the appellees, as complainants in the court below, and also the tax forfeited land patent issued by the state in favor of the appellant, Roy P. Collins, and quieted and confirmed the title of the appellees to the land involved, must therefore be affirmed.

Affirmed.