LONG-BELL PETROLEUM COMPANY, INC. *v.* HAYES.

No. 41063 March 9, 1959 109 So. 2d 645

*J. I. Ford,* Pascagoula; *Robert E. Covington, Jr.,* Quitman; *Warren E. Slagle,* Kansas City, Missouri; *H. M. Aldridge,* Mobile, Alabama for appellants.

*Riddell & Dabbs,* Quitman, for appellees.

McGehee, J.

The appellees, J. F. Hayes and others, filed their bill of complaint in the Chancery Court of Clarke County to cancel certain conveyances and mineral leases as clouds upon their title and to confirm their title to the oil, gas and minerals underneath the northwest quarter of the southeast quarter and the southwest quarter of the southeast quarter of Section 2, Township 2, North, Range 16 East. The ownership of the surface of the said lands is not here involved. From a decree in favor of the complainants granting the relief sought this appeal is taken.

On January 1, 1912 the land and the minerals were owned by the Mississippi Lumber Company and were assessed to the said lumber company for the year 1912, and the said company was therefore liable for the taxes for that year. On January 3, 1912 the Mississippi Lumber Company conveyed the land to S. A. Boykin, reserving to itself all of the oil, gas and other minerals. Thereafter S. A. Boykin and wife conveyed to C. S. Ray, trustee for J. K. Kirkland, to secure an indebtedness due January 1, 1913. This conveyance did not except the oil, gas and other minerals. The taxes on neither the lands nor the minerals were paid for the year 1912, and the sheriff and tax collector was directed by an order of the board of supervisors of the county to sell all the lands in the county on which the taxes for 1912 had not been paid. This sale was made on September 1, 1913, whereat J. K. Kirkland became the purchaser. He later sold the southwest quarter of the southeast quarter to one Daniels and the northwest quarter of the southeast quarter to the appellant, Hayes. The forty conveyed by Kirkland to Daniels passed by mesne conveyance to other persons who are now complainants in this suit.

The deed of trust given by S. A. Boykin and wife in favor of J. K. Kirkland, beneficiary, was foreclosed in 1918 but that foreclosure is not relied on in this case. The question here is the validity or invalidity of the tax sale of September 1, 1913. The tax sale is attacked by the appellants, Long-Bell Petroleum Company, Inc. and the Phillips Petroleum Company, a corporation, insofar as such sale purports to affect the oil, gas and other minerals underneath the land.

The tax sale is contended by the appellants to be void for the following reasons: First, that since the sale was made to an individual, the same is void on the alleged ground that the sale was made for less than the amount of the taxes and costs accruing to the time of the sale. Second, that neither the tax collector's deed nor the list of lands sold to individuals was filed with the chancery clerk immediately as required by the statutes then in force, there being a delay of eight days in the filing thereof. Third, that the purported tax sale of September 1, 1913 could not have been made at the courthouse, as the law requires, since on that date the courthouse is alleged to have been torn down and was nonexistent, and the board of supervisors had allegedly failed and neglected to designate a place for the holding of the tax sale, and, fourth, that J. K. Kirkland, the purchaser at the purported tax sale, was a mortgagee at the time he purported to purchase at the tax sale, and that he did not and could not thereby acquire an adverse title.

The tax collector's deed was executed and acknowledged before the chancery clerk on the date of the sale, and it recites in the face thereof that these lands were sold on that day "according to law", and further "that J. K. Kirkland became the best bidder at the sum of $6.50," but on the reverse side of the tax collector's deed there is an itemization showing Sheriff's fees, $1.75, Clerk's fee, $.60, State tax, $1.92, County tax, $3.20, Damages, $.51, and "Overbid", $.27, making a total of $9.05.

The foregoing facts are shown by the original of the tax collector's deed introduced in evidence. However, the appellants contend that the amount of taxes and costs actually due on the date of the sale was $6.98, or an excess of $.48 above the amount which the original tax deed recites in its face was paid by the purchaser.

Without objection from the appellants, a photostatic copy of the record of tax lands sold to individuals in Clarke County, Mississippi, on September 1, 1913, by the sheriff and tax collector was introduced by appellees and shows that there was assessed for the year 1912 to the Mississippi Lumber Company the land described as the southwest quarter of the northeast quarter, north half of the southeast quarter and southwest quarter of the southeast quarter, and that the same was sold to J. K. Kirkland, with no exception as to the minerals, for the sums mentioned in the foregoing paragraph, including the specific fees for filing and acknowledgment, $.50, and recording, $.30, making the total of $9.05 for the three parcels of land. The certificate of the sheriff and tax collector on this list recites that the lands described thereon were sold "pursuant to the requirements of law".

Section 1983, Code of 1906, which was in force at the time of the tax sale in question, reads in full as follows: "A conveyance made by a tax collector to an individual purchaser of land at a sale for taxes, and the list of lands sold to the state at such sale, shall be prima facie evidence that the assessment and sale of the land were legal and valid."

Section 2197, Code of 1906, which governed as to the fees of the sheriff and tax collector on September 1, 1913 for the collection of delinquent taxes, provides for the fees hereinbefore mentioned in paragraph 5 of this opinion, and expressly states that these fees shall be "payable by the delinquent tax-payer alone".

Section 2935, Code of 1906, which governed the filing of the list of lands here involved declares, among other

things, that "And the list of lands sold to the state and conveyances to individuals shall be immediately filed in the office of the clerk of the chancery court, * * *."

Section 4328, Code of 1906, which is also applicable here provides, among other things, "but neither a failure to advertise nor error in an advertisement nor error in conducting the sale, shall invalidate a sale at the proper time and place for taxes, of any land on which the taxes were due and not paid; but a sale made at the wrong time or at the wrong place shall be void."

Section 4332, Code of 1906, which is also applicable here, provides, among other things, that "no such conveyance shall be invalidated in any court except by proof that the land was not liable to sale for the taxes, or that the taxes for which the land was sold had been paid before sale, or that the sale had been made at the wrong time or place; * * *."

Section 4367, Code of 1906, dealing with the question of how land not sold at the regular time may be sold, provides, among other things, "a list of lands sold to the state and of conveyances to individuals shall be immediately filed in the office of the clerk of the chancery court, * * *." This statute is also applicable and is to the same effect as Sec. 2935, Code of 1906, supra.

The appellants cite the case of Darnell, et al. v. Smith, et al., 115 Miss. 547, 76 So. 547, but this case was a suit by the tax payer against the sheriff and tax collector for $122 alleged to have been charged for making tax sales where the tax payer had paid the taxes following the advertisement for sale and prior to the time of sale. The Court held that the sheriff and tax collector was, nevertheless, entitled to the fees. We do not think that this case is at all controlling on the first issue involved on this appeal. This is true of the case of Miller v. Land Co., 74 Miss. 110, 20 So. 875 for the same reason.

The appellants also rely upon the case of Yazoo-Delta Mortgage Co. v. Lumbley, 149 Miss. 864, 116 So. 95, but

in that case the Court did not consider the question of the proper amount of costs to be collected but was concerned primarily with the state being able to collect the revenue to which it was entitled, and to avoid leaving a personal debt due by the tax payer to the state for the taxes to which the state was entitled; and in the case of Crorow Hardwood Co. v. Moye, 161 Miss. 642, 137 So. 493, the Court recognized that the question of the amount of costs that should be collected was not involved in the case of Yazoo-Delta Mortgage Co. v. Lumbley, supra, and held that fees for a tax deed were not "costs of tax sale," and failure of bid to cover such fees did not invalidate the sale. The Court discussed the case of Yazoo-Delta Mortgage Co. v. Lumbley, supra, and then considered Sec. 524, Code of 1880, in connection with Sec. 523 thereof and expressly stated: "What constituted 'all costs' within the meaning of the statute was not considered by the Court" (in the *Lumbley case.*) In the *Crorow Hardwood Co.* case the tax sale was made to Poitevent and Favre. The Court concluded its opinion by saying: "We are of the opinion that the Lumbley Case does not control here, that the question here decided was not before the court, and that the fees of the sheriff and clerk for executing and acknowledging the deed are not a part of the costs to which this statute has reference. * * *" The Court had previously stated in the opinion that: "The Lumbley case did not consider what constituted all costs, and, so far as we are able to ascertain this is the first time this matter has been presented to the Court. The Lumbley case is not controlling here and did not decide what constituted costs. The thing apparent there was that the taxes due had not been bid by the individual purchaser, and thereby it was the duty of the sheriff in that event to have sold the lands to the state, thereby protecting the state for its taxes and all costs, and at the same time protecting the owner of the lands from a suit by the state for a balance now collectible as debt." The Court further observed, in construing Secs.

523 and 524, Code of 1880, that ''It may be said that there is practically no difference in the statute considered by Judge Ethridge in the *Lumbley case,* supra, and the statute which we shall now proceed to discuss with reference to the point involved in this case. We do not think the *Lumbley case* is decisive of the question presented here now for decision. ''What constituted 'all costs' within the meaning of the statute was not considered by the Court.''

 ██ There is no problem presented by the case at bar of the state losing its taxes or the landowner suffering a judgment against him for a deficiency, whether the bid of the tax purchaser was under the amount of taxes and costs due by the sum of $.48 or was in excess of that amount to the extent of $.27. The chancellor had sufficient evidence before him to adopt the latter view, since both the list of lands and the notation on the sheriff's tax deed showed the $.27 excess charged.

 ██ On the second proposition the appellants cite the case of Fairly v. Albritton, 121 Miss. 714, 83 So. 801. In that case the list of the lands sold to individuals for taxes was not filed until 34 days after the sale. The Court held that this was not an ''immediate'' filing of the list with the clerk. The Court said: ''We think the word 'immediately' in the statute means that the filing must be done as soon as practicable, under the circumstances, after the sale.'' The Court further stated that'' 'immediately' is a term of relative signification, and never designates an exact portion of time, and is used with more or less latitude by universal consent according to the subject to which it is applied.'' The Court further said that the word meant ''as soon as practicable under the circumstances; as soon as the collector could conveniently make up the list and file it with the chancery clerk.''

As to how soon a sheriff and tax collector could conveniently check the land numbers, prepare the deeds and the list of lands sold for taxes would depend largely upon what else he had to do in the meantime.

A case which we think is very analogous on this point is that of State, ex rel. Knox, Attorney General v. Wyoming Manufacturing Co., 138 Miss. 249, 103 So. 11.

██ █ The trial court would have been warranted in finding from the proof that the deeds and the list could have been prepared and filed the next day but that would depend on what other duties he had to perform and the only testimony directly in point on this issue is that of Mr. J. C. Kitchens, the outside deputy sheriff who was a constable in 1913; and he testified that the only man to do the work in the sheriff's office was Mr. Fred Everett, and that "there was a lot in the sheriff's office to do them days, more than is now look like." The trail court found that Everett was the only man in the office to do any work and that he collected the taxes, was custodian of the records, issued all process and did everything else that was to do in the office. Evidently the trial judge did not feel that he could say with an abiding confidence that this officer who was without the use of modern conveniences could have conveniently prepared the 33 deeds, the list of the lands and checked the numbers, etc., within less time than he did do so. The trial court further found as a fact that on account of the fact that the courthouse was being torn down, the records moved from the various county offices to the vault in the jail and the offices themselves being removed to the Carter building in the town, there was necessarily such confusion as would not justify the court in holding that the execution of the deeds and the filing of the list was not done immediately within the meaning of the statute.

The strongest case relied upon by the appellants is that of Gee v. Tucker, 127 Miss. 866, 90 So. 712, where the conveyance was not made until the nine days after the sale and wherein the Court said: "The list of lands sold to individuals and the conveyances were not filed in the office of the chancery clerk until September 12" following the sale on September 3, 1917. The tax deed of the appellant

was acknowledged on September 3, the date of the sale, and the Court said: "The only testimony in the record as to how long it would have taken to make out the list of lands sold to individuals is that of the deputy sheriff who actually made the sale. He testifies that he could have made out this list in four or five hours. * * *" The Court concluded its opinion by saying: "There is no attempt whatever in this case to show that this conveyance was filed as soon as practicable under the circumstances. It is not shown that the sheriff was so busy with other duties that the list could not have been filed immediately. * * *"

We think that the factual situation in the instant case was different in that the courthouse was being torn down in preparation for the same to be rebuilt, and the records of the county officers and their offices had been ordered to moved elsewhere.

The case of Salter, et al. v. Polk, et al., 172 Miss. 263, 159 So. 855, was here on demurrer and it was held that a bill of complaint alleging that the sheriff immediately file the tax deed was sufficient, though the deed on its face showed that 23 days elapsed between the date of the sale and the date of acknowledgment. However, the Court held that the acknowledgment was not necessary and that the date of the acknowledgment did not necessarily show that it had not been filed prior thereto.

In the case of Barron, et al. v. Eason, et al., 199 Miss. 739, 25 So. 2d 188, the certificate of the tax collector attached to the list of lands sold to the state, as filed with the chancery clerk, stated that the sales were made September 2, 1929 "* * * for delinquent taxes for the fiscal year, 1929, pursuant to the requirements of law." This certificate was held by this Court not to be conclusive, since it was apparent that the land had been sold for the delinquent taxes for the fiscal year 1928. We mention this case merely to show that the certificate of the sheriff

and tax collector to a tax deed is not necessarily conclusive of the recitals therein contained.

We are unable to say that the chancellor was manifestly wrong in holding that the tax deed here involved and the list of lands sold to individuals were not filed immediately within the meaning of the statute in question.

■■ ■ On the third proposition "that the purported tax sale of September 1, 1913 could not have been made at the courthouse, as the law requires, since on that date the courthouse * * * was nonexistent," we are unable to agree with the appellants that the proof disclosed that the courthouse had been completely torn down and was nonexistent on that date. Mr. Kitchens testified as the only witness on that issue as follows: "Q. Do you recall what shape the old courthouse was in on September 1, 1913? A. Well, I think *it was being* tore down then the best I remember. That was when it was tore down, '13 and '14, * * *." There is no testimony in the record at all as to when the old courthouse ceased to be used as such. As to what stage had been reached on September 1, 1913 in the progress of tearing it down for the rebuilding of a new one is not disclosed by the record.

On the other hand, there is what purports to be an opening order of the board of supervisors for the September 1913 meeting which reads as follows: "Be it remembered that a lawful meeting of the Hon. Board of Supervisors of Clarke County, Mississippi, was begun and held in the Courthouse in the town of Quitman on the 1st. day of September, A. D. 1913, it being the time and place designated by law for holding said meeting." The minutes purport to show that that meeting of the board continued in session until, September 18, 1913, meeting each day with all members present except on Sundays.

There purports to be an order in the precise language above quoted for the opening of the October 1913, Novem-

ber 1913, December 1913, and for January 1914 through June 1914.

There is no proof in this record as to where the tax sale in question was actually made. The provision in Sec. 1983, Code of 1906, means the conveyance made by the tax collector here in question was prima facie evidence that the assessment and sale of the land was legal and valid.

The cases of Thayer v. Hartman, 78 Miss. 590, 29 So. 396, and Collins v. Wright, 197 Miss. 695, 20 So. 2d 837 are not controlling here for the reason that in those two cases there was no question as to when the county ceased to use the old courthouse since they were destroyed by fire, and the Court merely held that it was necessary for the sale to be held at some other place designated by the board supervisors. Evidently the tax sale here in question was either held at the door of the old courthouse before it was torn away or at the door of the Carter building where the county officers had moved their offices. Mr. Kitchens testified that the sheriff's office was in the building owned by Jeff Carter or Cole at the time the courthouse was torn down. He was asked: ''Were all the county offices located in that building at the time the courthouse was being rebuilt? A. Yes, sir, they were all there.''

In view of the certificate of the sheriff on the tax deed and list of lands sold to individuals for taxes, and the presumption to be indulged as to the correctness thereof, we are unable to say under all the facts and circumstances of this case that the chancellor was manifestly wrong in holding that this tax sale was valid, that is to say in holding that it was held at the proper time and place.

■■■ Lastly, it is urged that J. K. Kirkland, the purchaser at the purported tax sale, was a mortgagee at the time he undertook to purchase at the tax sale, and that he did not and could not thereby acquire an adverse title.

But this litigation is as to the title of the minerals underneath the land hereinbefore described. Those minerals admittedly belonged to the Mississippi Lumber Company at least until the date of the tax sale. Kirkland was not a mortgagee of the Mississippi Lumber Company. He was the mortgagee of S. A. Boykin to whom the Mississippi Lumber Company had sold and conveyed the surface of the land. This litigation is not between Kirkland or his vendees and the mortgagor, S. A. Boykin, or his vendees, but is between those who have acquired the title of Kirkland and those who claim the title of the vendees of the Mississippi Lumber Company.

■■■ It is a well settled rule that where a mortgage or deed of trust contains a provision to the effect that in the event the mortgagor should default in the payment of the taxes on the property involved, the mortgagee may pay the same and add it to the indebtedness, and let it be secured by the mortgage or deed of trust. Hatchett, et al. v. Thompson, 174 Miss. 502, 165 So. 110; Federal Land Bank of New Orleans v. Newsom, et al., 175 Miss. 134, 166 So. 346, 59 C. J. S. 370, Sec. 298, and 51 Am. Jur. 918, 919, Sec. 1053.

We do not think that the case of Ragsdale, et al. v. Alabama Great Southern Railroad Co., 67 Miss. 106, 6 So. 630, is applicable here. There, Ragsdale owned thirty acres of a forty and the railroad company owned the other ten acres. It was all assessed to Ragsdale and he was not authorized to acquire title to the whole at a tax sale. No mortgagee was there involved.

Although the cases of Middletown Savings Bank v. Bacharach, 46 Conn. 513 and Cone v. Wood, 108 Iowa 260, 79 NW 86, 75 Am. St. Rep. 223, may contain expressions to the contrary, we do not think that J. K. Kirkland owed any duty by express covenant or by law to pay the taxes here involved for the year 1912 at the tax sale on September 1, 1913.

For the foregoing reasons it follows that we have concluded, after a careful study and investigation of the statutes and authorities, that the decree appealed in favor of the appellees should be affirmed.

Affirmed.

*Hall, Arrington, Ethridge,* and *Gillespie, JJ.,* concur.